**INTER–CITY TIRE AND AUTO CENTER, INC.,**
**Plaintiff–Counter–Defendant,**

**v.**

**UNIROYAL, INC.,**
**Defendant–Counter–Claimant.**

**SIEGEL TIRE & BATTERY CORP.**
**and Richard L. Siegel, Defendants,**

**v.**

**Morris ERBESH, Tina Erbesh and E & S Realty Corp., Additional Parties on Counter–Claim.**

Civ. A. No. 85–1797.

United States District Court,
D. New Jersey.

Dec. 28, 1988.

Edward J. Boyle, Wilson, Elser, Moskowitz, Edelman & Dicker, Newark, N.J., for plaintiff-counter-defendant.

John D. Briggs, Gaspare J. Bono, Thomas N. Heyer, Keith L. Seat, Howrey & Simon, Washington, D.C., William S. Tucker, Stryker, Tams & Dill, Newark, N.J., for defendant-counter-claimant Uniroyal, Inc.

Barry S. Goodman, Jeffrey B. Steinfeld, Greenbaum, Rowe, Smith, Ravin, Davis & Bergstein, Woodbridge, N.J., for defendants Siegel Tire & Battery Corp. and Richard L. Siegel.

## OPINION

POLITAN, District Judge.

This matter comes before the Court on defendant Uniroyal's motion for summary judgment on liability and on damages. Defendant Siegel Tire has also moved for summary judgment on the antitrust counts of the Complaint and on certain state law tortious interference claims. In addition, defendant Siegel Tire has moved for summary judgment as to liability on the counter-claim. For the reasons outlined herein, Uniroyal's motion for summary judgment on liability is granted; the motion for summary judgment on damages is mooted. Siegel Tire's summary judgment motion is granted. The motion for summary judgment on the counter-claim is denied and the counter-claim is dismissed.

The facts in this case need not be repeated at length having previously been set forth in various opinions issued by Judge Ackerman, who had presided in this case before it was transferred to me. Suffice it to say that plaintiff Inter–City is engaged in the retail and wholesale sale of automotive tires in the New York—New Jersey market. Defendant-counter-claimant Uniroyal manufactures and sells automotive tires under its own brand name. Defendant Siegel Tire & Battery Corporation and Richard Siegel are Uniroyal's designated distributor for New Jersey and certain New York counties. Inter–City's Complaint alleges antitrust violations and breach of contract theories.

The case arises out of a fundamental change in Uniroyal's method of distributing and selling tires. Prior to 1984, Uniroyal sold directly to retail dealers. From 1981 through 1984, Uniroyal experimented with various ways to market its tires. For the

years 1981, 1982 and 1983, Inter–City entered into successive dealer agreements with Uniroyal. These agreements represented the entire agreement of the parties and superseded any other agreements or arrangements. The agreements also provided that any modifications must be in writing and signed by Uniroyal. None of the agreements provided for the pooling of assets, profits or losses between the parties. By their terms, these agreements expired on or before December 31, 1983. Since that date, there has been no written agreement in place between Inter–City and Uniroyal.

In 1984, Uniroyal notified Inter–City and other direct purchasers across the country that it was going to utilize exclusive distributors and would no longer supply tires on a direct basis after December 31, 1984. Inter–City was advised to obtain Uniroyal tires from the exclusive distributor for the trade area in which Inter–City retail stores were located; in the instant case, from either Siegel Tire & Battery in New Jersey or Elman Bros. Inc. in New York. Inter–City made arrangements with Elman to purchase all of the Uniroyal tires it needed for its New York and New Jersey stores. Inter–City did not enter into any arrangements with Siegel Tire because the proprietors were not on good terms.

Prior to the close of 1984, Inter–City placed unusually large orders with Uniroyal, presumably to obtain as many tires as it could before the exclusive distributorship arrangements went into effect. Inter–City did not pay for these tires and Uniroyal instituted suit against Inter–City in New York state court. Inter–City counterclaimed in the New York proceeding with several contract claims and then filed this separate federal antitrust action in this Court. The two actions were then consolidated here and the New York action was dismissed. Earlier in the proceedings, Judge Ackerman granted summary judgment in favor of Uniroyal in connection with the non-payment for the tires.

Throughout this proceeding, Inter–City has been remiss in its discovery obligations. As a result of such failings, several preclusionary orders were entered by Magistrate Perretti, who was then assigned to the case. These orders have been affirmed by Judge Ackerman. The orders prohibit Inter–City from using at trial any of the documents that were not produced by the May 12, 1986 deadline. In a supplement to the Pretrial Order, Magistrate Perretti further precluded the parties from introducing expert testimony and expert reports at trial. Most of the documents that Inter–City seeks to use to prove damages have been precluded by these orders.

In the third amended Complaint, plaintiff alleges violations of the Sherman Act, the Robinson–Patman Act, the New Jersey Franchise Act, and common law claims sounding in joint venture and breach of contract. Defendant Uniroyal has moved for summary judgment on these counts on both liability and damages.[1]

According to Rule 56, summary judgment may only be granted if, drawing all inferences in favor of the nonmoving party, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.), *cert. dismissed,* —— U.S. ——, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). An issue of fact is "material" only when the dispute is over facts that might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *See id.* Summary judgment may be granted against a

---

**1.** At oral argument, counsel for plaintiff represented to the court that Count 4 of the Third Amended Complaint which had alleged violations of the Franchise Practices Act, N.J.Stat. Ann. 56:10–1–56:10–15 (West 1964 & Supp 1988), and the various contract claims were being withdrawn.

party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, for which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. *See Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial," or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e) (emphasis in *Matsushita* )).

As the Court in *Celotex* stated, "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." *Celotex,* 477 U.S. at 323–34, 106 S.Ct. at 2553. Fully cognizant of this premise, I now consider the merits of each motion.

SHERMAN ACT CLAIMS (Counts 1, 3, 5)

■ Count 1 of the Complaint alleges an antitrust conspiracy between Uniroyal and Siegel Tire for the purpose of "resale price maintenance and vertical price fixing" in violation of Section 1 of the Sherman Act, 15 U.S.C. sec. 1 (1982). Inter–City contends that this alleged antitrust violation constitutes a *per-se* violation of Section 1 of the Sherman Act. Summary judgment should be entered on this count because *per-se* liability is contrary to the Supreme Court's recent decision in *Business Electronics Corp. v. Sharp Electronics Corp.,* — U.S. —, 108 S.Ct. 1515, 99 L.Ed.2d 808 (1988). In that case, Sharp terminated its dealer relationship with Business Electronics following complaints and threats from another dealer based on the low prices of Business Electronics. In reaching its decision, the Court discussed the limited

purpose of the *per se* rule in the context of vertical restraints and the difficulty manufacturers have avoiding *per se* liability for "legitimate and competitively useful conduct." *Id.* 108 S.Ct. at 1521. The Supreme Court concluded that "a vertical restraint is not illegal *per se* unless it includes some agreement on price or price levels." *Id.* at 1525.

Inter–City has pleaded a *per se* liability case. Having done so, plaintiff must now demonstrate that some agreement to fix prices or price levels existed between Uniroyal and Siegel. In this case, the record is simply devoid of any evidence of an agreement between Uniroyal and Siegel to set particular resale prices. *Business Electronics* mandates that Uniroyal's conduct be measured under the rule of reason standard. *See id.* at 1519. Inter–City has not pleaded a rule of reason case and therefore, summary judgment is appropriate on the Sherman Act claims on that ground alone.

■ Assuming *arguendo,* that the Court liberally construes plaintiff's Complaint to encompass the rule of reason standard, summary judgment is still appropriate. Under the rule of *Continental T.V., Inc. v. GTE Sylvania, Inc.,* 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977), a vertical restraint is not unreasonable unless it impacts on interbrand competition. To establish a restraint on interbrand competition, it must be shown that the manufacturer imposing the restriction has market power. *See O.S.C. Corp. v. Apple Computer, Inc.,* 601 F.Supp. 1274, 1291 n. 8 (C.D.Cal.1985), *aff'd.* 792 F.2d 1464 (9th Cir.1986). Without market power, a manufacturer is not in a position to restrict competition regardless of the restraint imposed. *See, e.g., Assam Drug Co. v. Miller Brewing Co.,* 798 F.2d 311, 316 (8th Cir.1986) ("a finding of no market power precludes any need to further balance the competitive effects of a challenged restraint"). In the instant case, Uniroyal does not have market power and therefore cannot be liable under section 1 of the Sherman Act for the vertical restraint alleged by Inter–City. Uniroyal has submitted declarations which assess their

market share at 2.8% nationwide for passenger tires and 1.8% of the market in New Jersey. Inter–City has not submitted any statistics which dispute those figures. Clearly, these market shares are insufficient to confer the threshold requirement of market power. Therefore, summary judgment will be granted.

■ In addition, plaintiff's argument that they would establish a violation of the Sherman Act through trial testimony also fails. Plaintiff had intended to introduce at trial the principal owner of Elman Brothers to testify that when dealers complained about Mr. Erbesh, the owner of Inter–City, Siegel made the representation that Mr. Erbesh would be taken care of shortly. That, without more, does not rise to the level of an implied agreement in restraint of trade. The Supreme Court specifically acknowledged in *Business Electronics* that:

> Any agreement between a manufacturer and a dealer to terminate another dealer who happens to have charged lower prices can be alleged to have been directed against the terminated dealer's "price cutting." In the vast majority of cases, it will be extremely difficult for the manufacturer to convince a jury that its motivation was to ensure adequate services, since price cutting and some measure of service cutting usually go hand in hand.

108 S.Ct. at 1521.

The Supreme Court did not agree that vertical price agreements generally underlie agreements to terminate a price cutter. "That proposition is simply incompatible with [prior precedent established in] *GTE Sylvania* and *Monsanto* that manufacturers are often motivated by a legitimate desire to have dealers provide services, combined with the reality that price cutting is frequently made possible by 'free riding' on the services provided by other dealers." *Id.* at 1523.

Judge Wolin, of this Court was faced with a similar situation in *Corrosion Resistant Materials Co. v. Steelite, Inc.*, 692 F.Supp. 407 (D.N.J.1988). In that case, a distributor brought suit against a manufacturer to recover for violations of the Sher-

man Act after the distributor was terminated. Judge Wolin, relying on *Business Electronics*, granted summary judgment against the distributor because there was no evidence that the parties had conspired to fix prices. The plaintiff in that action argued that they would introduce at trial certain circumstantial evidence as to an implied agreement between the defendants. Judge Wolin stated that this argument "clearly runs counter to the logic, and indeed the law, of *Business Electronics*." *Id.* at 414.

Moreover, there is no evidence in the record to support a conspiracy theory. Parties are free to associate with whomever they choose. As the Third Circuit has stated, "[t]he unilateral decision of a single manufacturer to rearrange its distribution structure by limiting or increasing the number of its dealers or transferring its business to different dealers does not violate the Sherman Act." *Seaboard Supply Co. v. Congoleum Corp.*, 770 F.2d 367, 374 (3d Cir.1985) (citations omitted). Under the Supreme Court decision in *Monsanto Co. v. Spray–Rite Service Corp.*, 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984), an antitrust plaintiff must present evidence that tends to exclude the possibility that the manufacturer and the distributors were acting independently. *Monsanto*, 465 U.S. at 764, 104 S.Ct. at 1471. In this case, Inter–City must present either circumstantial or direct evidence that Uniroyal and Siegel had a "conscious commitment to a common scheme designed to achieve an unlawful objective". *Id.* Despite the voluminous papers filed in this action, no evidence, either circumstantial or direct has been proffered that could lead this court to conclude that any conspiracy existed.

■ Counts Three and Five contain state law counterparts to the Sherman Act. Count Three is the New Jersey Antitrust Law, N.J.Stat.Ann. 56:9–3, and Count Five alleges violations of the Donnelly Act, N.Y. Gen.Bus.Law sec. 340 (McKinney 1968). Both of these statutes are modelled after the Sherman Act and are to be construed in accordance with federal decisions interpreting the Sherman Act. *See* N.J.Stat.Ann.

56:9–18 ("[t]his act shall be construed in harmony with ruling judicial interpretations of comparable Federal antitrust statutes"); *H.L. Hayden Co. v. Siemens Medical Systems, Inc.*, 672 F.Supp. 724, 745 (S.D.N.Y.1987) (granting summary judgment on the Donnelly Act claim because summary judgment was appropriate on the Sherman Act claims). Thus, for the reasons stated above, summary judgment will be granted on these state law claims.

## ROBINSON PATMAN CLAIMS (count 2)

■ Inter–City alleges that Uniroyal violated section 2(a) of the Robinson–Patman Act, 15 U.S.C. sec. 13(a) (1982) by price discriminating in the tire market. Plaintiff contends that Uniroyal set different prices for Inter–City and Siegel Tire and that such discrimination is a violation of Robinson–Patman. In order to establish a cause of action under section 2(a), Inter–City must show that Uniroyal discriminated in price between Inter City and other purchasers *who compete at the same level of distribution,* and that such price discrimination substantially lessened competition. *See Federal Trade Commission v. Fred Meyer, Inc.,* 390 U.S. 341, 348–49, 88 S.Ct. 904, 908–09, 19 L.Ed.2d 1222 (1968) (emphasis supplied). In the instant case, however, Inter–City was a retail dealer in tires and Siegel was a tire distributor. Thus, the two did not operate on the same functional level. It is clear that certain price discrimination is permissible when it occurs between entities of differing functional levels. *See Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.,* 637 F.2d 105, 120 (3d Cir. 1980), *cert. denied,* 451 U.S. 911, 101 S.Ct. 1981, 68 L.Ed.2d 300 (1981). Inter–City argues that since it functioned as both a distributor and a dealer in 1983, it served the same functional role as Siegel Tire in 1984 even though technically, its distributorship ended December 31, 1983. This argument, however, is not supported by the evidence. Mr. Erbesh, at his deposition, testified that in 1984, he was a retail dealer. He testified that retailing was where

his business strength lay and that Uniroyal desired to maintain a business relationship with him as a retailer. Further, Inter–City only made two wholesale sales in 1984. Therefore, the evidence clearly supports the position that Inter–City was a retailer in 1984 and was not entitled to receive the same pricing structure as a distributor.

At oral argument, counsel for Inter–City suggested that this court should analyze the Robinson–Patman claim in terms of price of goods to a price cutter. While this is creative argument, it is not what Robinson–Patman mandates. Robinson–Patman directs itself to levels of competition. In this case, the parties did not compete at the same functional level in 1984. Therefore, summary judgment will be granted on the Robinson–Patman claims.

## JOINT VENTURE CLAIMS (Count 18)

Count 18 of the Third Amended Complaint alleges violation of a joint venture agreement allegedly in effect between the parties. This agreement was oral in nature and supposedly came into effect in 1980 when Uniroyal sent representatives to Inter–City to help develop markets in a five county geographic territory. According to plaintiff, the agreement was that the parties would work together to create and cultivate new business for both Uniroyal and Inter–City. Defendant denies the existence of any sort of joint venture agreement and claims that even if one existed in 1980, it fails because it was not in writing, in violation of the Statute of Frauds. Further, Uniroyal contends that written contracts executed by the parties after 1980 contain merger clauses which supersede all previous agreements. This court agrees with Uniroyal and will grant summary judgment on this count as well.

■ Oral agreements that cannot be performed within one year are unenforceable pursuant to the Statute of Frauds, as codified in N.J.Stat.Ann. 25:1–5 (West 1940) and N.Y.Gen.Oblig.Law 5–701 (McKinney 1978 & Supp.1988).[2] Mr. Erbesh, at his

---

**2.** Counsel for plaintiff has argued that New York law should apply to the analysis of a joint venture. Regardless of whether this court applies New York or New Jersey law, the joint venture claim must fail for the reasons stated above.

deposition, testified that this agreement was meant to be in effect for "a lifetime." He clarified that statement by adding that the agreement was not meant to supply Inter–City with a lifetime supply of tires within a year but rather was meant to be in effect for longer than one year. Since the agreement cannot be fully performed within one year, it is unenforceable under the Statute of Frauds.

■ Further, even assuming the court finds that an agreement existed in 1980, the parties' subsequent written contracts nullified any oral agreement. Each dealer agreement signed by Mr. Erbesh on behalf of Inter–City from 1980 through at least 1982 contains a standard merger clause.[3] The clause provided that this "agreement supersedes ... any other agreement or arrangement," that the written contract contained "the entire agreement between the parties" and that "[a]ny modifications, additions or waivers must be signed" by Uniroyal. Thus, by their terms, Inter–City's dealer agreements with Uniroyal constituted the final expression of their business relationship and superseded all other oral or written agreements or arrangements, including any alleged joint venture regarding the sale of Uniroyal tires by Inter–City. Therefore, Inter–City is precluded from asserting the validity of this oral agreement for a joint venture.

■ Assuming *arguendo* that this court agrees with Inter–City that a joint venture was contemplated by the parties in 1980, they have still not established the basic elements required for a joint venture under either New Jersey or New York law. Under both New Jersey and New York law, the requirements necessary to create a joint venture are: (1) an agreement between the parties manifesting some intent to be associated as joint venturers; (2) each party contributing money, property, effort, knowledge or some other asset to a common undertaking; (3) a joint property interest in the subject matter of the venture; (4)

a right of mutual control or management of the enterprise; and (5) an agreement to share in the profits or losses of the venture. *See Hellenic Lines, Ltd. v. Commodities Bagging & Shipping Process Supply Co.*, 611 F.Supp. 665, 679 (D.N.J. 1985); *accord Orderline Wholesale Distributors, Inc. v. Gibbons, Green, Van Amerongen, Ltd.*, 675 F.Supp. 122, 126 (S.D.N.Y.1987). From the record presented in this case, it is clear that the joint venture claim fails as a matter of law. The record is simply devoid of any evidence that the parties contributed to a common undertaking nor is there any joint property interest between the parties. Uniroyal and Inter–City did not pool their assets or profits. The arrangement was simply that Uniroyal sold Inter–City tires at a profit and Inter–City resold those same tires at a profit. The anticipation of separate profits for each party does not amount to an intention to share profits. *See Hellenic Lines*, 611 F.Supp. at 680 (anticipation of profits severally is not sufficient to create a joint venture). In *Orderline*, the court admonished that the absence of even one of the elements of a joint venture is fatal. *Orderline*, 675 F.Supp. at 126. Accordingly, summary judgment will be entered on the joint venture count.

Uniroyal has also moved for summary judgment on the issue of damages. Having granted summary judgment on the liability aspect of the case, the motion for summary judgment on damages is mooted and need not be addressed at this juncture.

INTER–CITY'S CLAIMS OF TORTIOUS INTERFERENCE (counts 6 and 7)

In Count six, Inter–City contends that Siegel Tire, and Richard Siegel, individually, tortiously interfered with Inter–City's contractual relations with Uniroyal. Count seven concerns Siegel Tires alleged interference with Inter–City's contract with General Tire. It is well settled that a plaintiff who alleges tortious interference with prospective economic advantage or contrac-

---

**3.** At oral argument, there appeared to be some confusion as to whether the dealer agreement was signed for 1983. For the purposes of this motion, however, it is irrelevant as to whether an agreement was signed in 1983. The agreements signed in 1981 and 1982 contain language merging all other agreements.

tual relations is required to prove that a third party intentionally and maliciously interfered with the present or prospective relationship between two other parties, and that the complaining party reasonably expected to receive economic benefit or advantage from the relationship. *See Harris v. Perl*, 41 N.J. 455, 197 A.2d 359 (1964). The malice required is "the intentional doing of a wrongful act without justification or excuse." *Albert M. Greenfield v. SSG Enterprises*, 213 N.J.Super. 1, 14, 516 A.2d 250 (App.Div.1986) (citations omitted), *certif. denied*, 107 N.J. 99, 526 A.2d 174 (1987).

In the instant Counts, as in the other counts, no evidence has been presented of actionable interference by Siegel Tire or Richard Siegel with Inter–City's relationship with either Uniroyal or General Tire. Plaintiff has simply failed to put forth any evidence that could lead a rational trier of fact to decide that any tortious interference with contractual relations occurred. As has been discussed earlier in the antitrust context, no evidence of a conspiracy exists between Siegel and Uniroyal. Further, Uniroyal's decision to terminate Inter–City's distributorship was not an isolated decision. Uniroyal restructured its entire distribution scheme and as a result of such restructuring, lawfully eliminated Inter–City as a distributor. This court cannot read into a record evil motives which are simply not there. On a motion for summary judgment, the party opposing the motion has the affirmative duty to come forth with evidence which shows that a genuine issue exists. That party cannot simply rest upon the allegations or denials contained in the pleadings. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. In this case, Inter–City has come forth with only speculative descriptions of what certain parties might testify to at trial. This, however, is not enough. Inter–City has submitted no affidavits or declarations to substantiate their position. Inter–City had an affirmative duty to come forth with evidence at this juncture, in order to defeat the summary judgment motion. They have not done so and summary judgment will be granted on counts six and seven as well.

Siegel Tire has filed a counter-claim in this action charging Inter–City with tortious interference with its contractual relations with Uniroyal. This court has reviewed the allegations contained in the counter-claim and find them to be baseless. As a result, I will dismiss the counter-claim.

For the reasons stated above, summary judgment will be granted on Uniroyal's motion as to liability. The Siegel Tire motion for summary judgment will be granted. The Siegel Tire counter-claim will be dismissed.